IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Z&R CAB, LLC and ZORO, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA PARKING | : | NO. 13-6173 |
| AUTHORITY | : | |

MEMORANDUM

Dalzell, J.                                                                                     June 4, 2014

## I.     Introduction

We here must consider whether a decision of the Commonwealth Court of Pennsylvania

applies retroactively to this 42 U.S.C. § 1983 case.  As will be seen, this inquiry obliges us to

analyze nuances of federalism.

Taxicab operators Z&R Cab, LLC and Zoro, Inc. (collectively, "Z&R Cab") bring this

suit individually and on behalf of a class of others to recover fees paid to the Philadelphia

Parking Authority (or the "PPA") under a state statute the Commonwealth Court held

unconstitutional in February of 2013.  The plaintiffs seek a declaration that all sums paid under

that statute since 2004 were paid in violation of the United States Constitution and should be

awarded to the plaintiffs and each class member, and they further seek to enjoin the PPA from

assessing or collecting further payments under that law.

The Philadelphia Parking Authority seeks dismissal of the suit, contending that the

Commonwealth Court's decision has only prospective application and that plaintiffs lack

standing to obtain the equitable relief they seek.

For the reasons detailed below we will deny defendant's motion to dismiss and hold that

the Commonwealth Court's decision has retrospective application.  But, as we lack subject-

matter jurisdiction to grant the plaintiffs the financial remedies they seek, we must dismiss the matter to maintain the federal-state comity as the United States Supreme Court obliges us to do.

## II.    Factual Background

At the heart of this controversy is a Commonwealth Court decision last year that held the Parking Authority's regulatory fee schedule and budgeting process were unconstitutional. MCT Transportation Inc. v. Philadelphia Parking Authority, 60 A. 3d 899, 901 (Pa. Cmwlth. 2013),[1] aff'd 81 A.3d 813 (Pa. 2013).

The seeds of this suit were sown in 2004 when the Pennsylvania General Assembly transferred the regulatory responsibility for taxicabs and limousines operating in Philadelphia to the Philadelphia Parking Authority from the Pennsylvania Public Utility Commission (the "PUC") -- which historically had been solely responsible for all taxicab and limousine regulation in the Commonwealth. MCT Transportation, 60 A. 3d at 901. Chapter 57 of the Parking Authority Law, 53 Pa.Cons.Stat.Ann. §§ 5701-5745, set forth the new regulatory regime. Id. The regulations provided that Philadelphia taxis and limousines would pay a fee -- which varied annually -- into a fund to support the PPA's regulatory activities. Id. Under Section 5707(b) of the Parking Authority Law, the PPA's budget process required it to submit a budget and proposed fee schedule before March 15 of each year to the Appropriations Committees of the Commonwealth's Senate and House of Representatives. Id. The fee schedule became effective unless either the House or Senate disapproved that budget through a resolution by April 15 of the same year. Id. If either the House or Senate disapproved of the fee schedule and budget, the

---

[1] On the same day, the Commonwealth came to an identical conclusion in a second unpublished opinion, Philadelphia Regional Limousine Ass'n v. Philadelphia Parking Authority, 2013 WL 3946215 (Pa. Cmwlth. Feb 14, 2013).

2

PPA could "submit a revised budget and fee schedule. . . within 15 days. . . [or] utilize the fee schedule and budget for the prior year." Id. at 902 (quoting 53 Pa.Cons.Stat.Ann. § 5707 (b)). Thereafter, unless either the House or Senate acted to disapprove the revised submission within ten legislative days, the PPA's revised budget and fee schedule became effective. Id.

On April 15, 2012, when the PPA's budget and fee schedule became effective through the just-described process, the taxicab companies refused to pay the invoiced fees. Id. The PPA responded by threatening them with citations and fines, impoundment of their vehicles, penalties, fees, and the revocation or cancellation of their certificates of public convenience. Id. The taxicab companies sued, seeking, inter alia, a declaration that Section 5707(b) as then written was unconstitutional because the General Assembly improperly delegated its legislative power to the PPA by supplying no guidance, standards or restrictions on the PPA's authority to formulate a budget or fee schedule. Id. at 903. They also sought a declaration that the fee schedule represents a taking without due process of law because Section 5707(b) did not provide for a hearing in which the taxicab companies might challenge the fees. Id.

In its decision in MCT Transportation, the Commonwealth Court reviewed the process by which state agency budgets are prepared and enacted under the Pennsylvania Constitution -- which governs the process for executive and independent agencies. Id. at 906. Article VIII, Section 12 of the Pennsylvania Constitution provides that the Governor shall annually submit to the General Assembly "a balanced operating budget for the ensuing fiscal year" with proposed revenue and estimated expenditures; a capital budget; and a financial plan. Id. at 907 (quoting Pa. Const. Art. VIII, § 12). The Pennsylvania Constitution directs the General Assembly to respond and a general or specific appropriations act becomes law when the Governor signs it. Id.

3

The Pennsylvania Supreme Court "established that this budget and appropriation process must be followed regardless of the source of the funds to be used by a state agency." Id. at 908-09 (citing Shapp v. Sloan, 391 A.2d 595 (Pa. 1978) (holding that legislative action is required before any funds can be used by a state agency)). "The General Assembly, alone, is charged with establishing spending priorities and allocating the available monies, thereby exercising control over all expenditures." Id. at 909 (internal citation, ellipses and emendations omitted).

The Commonwealth Court contrasted the PUC's budget process with the PPA's. As with the Parking Authority, the PUC is funded by fees from the utilities it regulates, which are held in trust solely to defray its administrative expenses. Id at 910. But the similarities end there. The PUC may assess utilities "up to three-tenths of one percent of gross intrastate revenue to cover the cost of regulation", id., and submits its annual budget request for the Governor's review and to both chambers of the General Assembly, which must approve the request before the Governor signs it and it becomes law. Id. at 910-911. "In short, the [PUC's] budget was established under the budgeting process that is mandated for all state agencies." Id. at 911.

By contrast, although it is also a state agency, the PPA's annual budget request at the time of the Pennsylvania suit was not submitted for the Governor's review. Indeed, the Governor did not approve it nor was the PPA's budget introduced in the General Assembly to be debated in each chamber before a vote. Id. Instead, its budget became law unless either the House or Senate vetoed it. As the Commonwealth Court stated,

> This manner of establishing a state agency's budget is sui generis. Unlike any other state agency, the Parking Authority sets its annual budget, which changes from year to year, without the oversight of either the Governor or the General Assembly as a body.

Id.

4

The court also noted that, although the fees paid were placed in a special fund consisting of three accounts -- the Taxicab account, the Limousine account and "Other accounts as determined by the authority" -- the PPA retained the power to allocate expenses between accounts "in a fair and equitable manner. . .as determined by the authority." Id. at 911-912 (citing 53 Pa.Cons.Stat.Ann. § 5708(c)(2)). By contrast, the Court explained, continuing appropriations into other Commonwealth funds are subject to statutory limitations that do not leave those funds any discretion about cost allocation. Id. at 912 n. 15.

Turning to the fee schedule imposed on the taxicab and limousine companies, the Commonwealth Court noted that "[t]he aggregate amount of fees to be paid by the utilities that report to the Parking Authority is a matter committed totally to the Parking Authority's discretion. How the fees are allocated among regulated taxicabs and limousines is likewise discretionary[.]" Id. at 913. By contrast, the PUC's allocation is determined by a legislative standard based on its regulated utilities' relative revenue and profitability. Id.

Because nothing in Section 5707(b) limited the PPA's discretion in allocating costs -- imposing neither a standard nor any limits -- and the House and Senate had only veto power rather than affirmative legislative power over the PPA's budget, the Court held that Section 5707(b) as then written was unconstitutional. Id. at 914-15.

The Commonwealth Court also agreed with the taxicab plaintiffs that Section 5707(b) "unconstitutionally deprives them of due process because it does not provide any procedure for challenging the Parking Authority's fee schedule, either before or after its adoption." Id. at 916. The Court cited well-established principles that "[t]he essential elements of due process are notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature

5

of the case before a tribunal having jurisdiction of the cause." Id. (internal citation and modifications omitted). In short, the PPA's position -- that the taxicab companies could "lobby the Appropriations Committees between March 15 and April 15 of each year" if they objected to the fee schedule -- fell short of the Due Process requirement, particularly as the taxicab companies faced a loss of their certificates of public convenience, impoundment of their vehicles or civil penalties if they failed to pay. Id. at 915-16. The Court concluded:

> It is not the mere absence of a hearing remedy in Section 5707(b) that renders it unconstitutional. Rather, it is the bar to any relief erected by Section 5707(b) that effects the due process violation.

Id. at 917.

The Court again contrasted the PPA process with the PUC's notice and hearing procedure, under which utilities challenging assessments pay under protest and then seek reimbursement. Id. at 918. "Because Section 5707(b) confers autocratic power upon the Philadelphia Parking Authority to condemn property without due process, it offends the due process provisions of the Pennsylvania and United States Constitutions." Id. at 919. The Court declared the provision unenforceable and enjoined the PPA from "taking any action with regard to [the plaintiffs] under authority of Section 5707(b)."[2] Id. at 920.

On November 20, 2013, the Pennsylvania Supreme Court affirmed without opinion.[3]

---

[2] As to the companion suit in which the Philadelphia Regional Limousine Association sued the PPA, the Court stated there that "[the MCT Transportation] holdings are dispositive in this case." Phila. Regional Limousine, 2013 WL 3946215 at *3.

[3] Section 5707 of the Parking Authority Law was amended last year to require annual submission of the PPA's budget to the General Assembly in accordance with the Pennsylvania Constitution. It also provides for notice of annual assessments, a fifteen-day period in which taxicab owners may file petitions contesting assessments, and a hearing process at the conclusion of which "the [A]uthority shall issue a decision and findings in sufficient detail to enable a court to determine, on appeal, the controverted question presented by the proceeding and whether proper weight was

6

### III.   **Procedural History**

We turn now to the controversy before us.

On October 22, 2013 Z&R Cab sued the PPA under 42 U.S.C. §1983 and 28 U.S.C. §1367 individually and on behalf of a class of individuals or business entities that had paid fees from 2004 to the present (and had not recovered those fees) assessed under the prior provisions of 53 Pa.Cons.Stat.Ann. § 5707(b). Cmplt. at 4. Z&R Cab seeks a declaratory judgment that all sums paid to, or for the use of, the PPA under that statute for that period "were paid in violation of the Constitution of the United States and in violation of 42 U.S.C. §1983, and are due and owing to the [p]laintiffs and to each class member". They also seek an injunction against the PPA to prevent it "from assessing or collecting payments from [p]laintiffs and the class member" under that statute, an award of "all sums paid to (or to the use of)" the PPA -- including pre- and post-judgment interest -- and costs and fees. Id. at 6.

The PPA filed its motion to dismiss arguing that Pennsylvania law does not allow retroactive application of a judicial decision that invalidates statutory taxes or fees. MTD Mem. of Law at 1. The PPA also contends that the plaintiffs lack standing to obtain either the declaratory or injunctive relief they seek. Id. at 9.[4]

---

given to the evidence." See 53 Pa.Cons.Stat.Ann. §§ 5707 et seq. in Omnibus Amendments Act of July 9, 2013, P.L. 455, No. 6.

[4] The PPA curiously refers to the "allegedly unconstitutional fee collection" in contesting plaintiffs' standing, MTD Mem. of Law at 10, although the Pennsylvania Supreme Court had on November 20, 2013 affirmed the unconstitutionality of Section 5707(b) -- before the PPA filed its motion to dismiss. The PPA does not otherwise dispute that the statute was found to be unconstitutional.

7

## IV.     Standard of Review

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of

proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see

also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). As the Supreme Court

held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662

(2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at

678 (quoting Twombly, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged," Iqbal, 556 U.S. at 678.

Post-Twombly and Iqbal, our Court of Appeals requires district courts considering a

motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-step analysis:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a 'plausible
> claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). In deciding a motion to

dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the

light most favorable to the plaintiffs, and all inferences must be drawn in their favor, see

McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks

omitted).

A complaint may be dismissed for failure to state a claim on which relief may be granted

where it is clear as a matter of law that no relief could be granted under any set of facts that

could be proved consistent with the allegations. See Ibarra-Villalva v. USP-Allenwood, 213 Fed.Appx. 132, 134 (3d Cir. 2007) (internal quotation marks and citation omitted).

## V.    Discussion

### A.    Retroactivity

We address first the PPA's argument that Z&R Cab is not entitled to an award of its previously paid fees because the Commonwealth Court's ruling that Section 5707(b) unconstitutionally imposed fees without due process is not retroactive. The PPA contends that the issue presented is the retrospective application of a now-final Pennsylvania court decision, which, the PPA contends, rests on the Commonwealth's right to determine its own retroactivity rules. See Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364 (1932) ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward.").

The PPA relies on Oz Gas, Ltd. v. Warren Area School District, 938 A.2d 274 (Pa. 2007), for its contention that "the Pennsylvania Supreme Court rejected the retroactive application of a decision invalidating the statutory basis for taxes which had been assessed and collected from plaintiffs." MTD Mem. of Law at 4 (emphasis in original). In Oz, the Pennsylvania Supreme Court considered the retroactive application of an earlier decision that held there was no statutory authority to tax oil and gas reserves as "real estate." See Independent Oil and Gas Ass'n of Pennsylvania v. Board of Assessment Appeals of Fayette County, 814 A.2d 180 (Pa. 2002) ("IOGA"). The plaintiff in Oz sought a refund for taxes it paid on its oil and gas interests in the three years before the IOGA decision. Oz, 938 A.2d at 276. The Taxing Authorities in Oz contended they had been legally entitled to collect the taxes in dispute prior to

9

the change in the law, and as IOGA announced a new principle of law it should have only prospective application.

The trial court in Oz applied the United States Supreme Court's three-prong test, as held in Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), for determining retroactivity as a civil matter. The Chevron Oil analysis requires courts to consider (1) whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation; and (3) the equities involved. See Chevron Oil, 404 U.S. at 106-107. The Pennsylvania Supreme Court, reviewing the Oz trial court, agreed with its conclusion that IOGA should not apply retroactively because IOGA announced a new principle of law as a matter of first impression. The Court also held that retroactive application would thwart the statute's purpose by depriving political subdivisions of revenues already spent and that these equities weighed heavily in favor of prospective application because for nearly one hundred years owners of oil and gas interests had paid the ad valorem tax. Oz, 938 A.2d at 279.

Z&R Cab, in response, contends that the Commonwealth Court in MCT Transportation found that the Parking Authority had violated the Due Process Clause by failing to provide a hearing to permit taxicab owners to challenge the fees and by the absence of any standards governing the fee schedule. Resp. in Opp. at 3. The plaintiffs maintain that Oz does not apply because the PPA relies on dicta in that decision and Oz's retroactivity analysis is limited to state court interpretations of state statutes and does not apply to federal constitutional violations. Further, they contend that MCT Transportation must apply retroactively because it did not

10

announce a new, unforeshadowed rule of law. Id. at 6.

　　　The plaintiffs urge us to apply the United States Supreme Court's holding in Harper v.

Virginia Department of Taxation, 509 U.S. 86 (1993). There, federal retirees sought a tax refund

because the Commonwealth of Virginia exempted state and local employees' retirement benefits

from state income taxation but not their federal retirement benefits. Harper, 509 U.S. at 90. The

Supreme Court had earlier held[5] that a State violates the constitutional doctrine of

intergovernmental tax immunity when it taxes retirement benefits paid by the federal government

but exempts from taxation all retirement benefits paid by a State or its political subdivisions. But

the Virginia Supreme Court, applying the retroactivity analysis of Chevron Oil, twice refused to

apply the earlier United States Supreme Court decision to state taxes that were imposed before it

was decided. Harper, 509 U.S. at 89.

　　　The United States Supreme Court reversed, and wrote:

> We reject the [D]epartment [of Taxation]'s defense of the decision
> below. The Supremacy Clause, U.S. Const., Art. VI, cl. 2, does not
> allow federal retroactivity doctrine to be supplanted by the
> invocation of a contrary approach to retroactivity under state law.
> Whatever freedom state courts may enjoy to limit the retroactive
> operation of their own interpretations of state law. . . cannot extend
> to their interpretations of federal law.

Id. at 100 (internal citations omitted).

　　　Plaintiffs here further urge that the Supreme Court's holding in Harper dictates

retroactive application of the Commonwealth Court's MCT Transportation decision because that

Court found that the PPA had violated federal and not state law in failing to provide due process

to the taxicab plaintiffs.

---

[5] See Davis v. Michigan Dept. of Treasury, 489 U.S. 803 (1989).

We agree. While the Supreme Court has not explicitly disavowed the Chevron Oil

retroactivity analysis,[6] the weight of authority holds that Chevron Oil has for the most part been

superseded.[7] There is little question that the Supreme Court's "retroactivity jurisprudence has

become somewhat chaotic in recent years." Harper, 509 U.S. at 113 (O'Connor, J, dissenting).

But Chevron Oil no longer has vitality when the change in law touches on federal law violations.

Harper followed several Supreme Court decisions that distinguished how retroactivity applied to

federal law from states' authority to devise their own such rules.[8] As Justice O'Connor

explained for the plurality in American Trucking Associations, Inc. v. Smith:

---

[6] Cf. Harper v. Virginia Department of Taxation, 509 U.S. 86, 102-03 (1993) ("In Teague v. Lane, 489 U.S. 288 (1989), Justice O'Connor wrote for a plurality that openly rejected settled precedent controlling the scope of retroactivity on collateral review. . . . The Teague plurality opinion set forth good reasons . . .justifying a similar abandonment of Chevron Oil Co. v. Huson[.]") (Scalia, J., concurring) (internal citations omitted)) and id., 509 U.S. at 110 ("[I]n my view retroactivity in civil cases continues to be governed by the standard announced in Chevron Oil Co. v. Huson[.]") (Kennedy, J., concurring) (internal citation omitted).)

[7] Our Court of Appeals held that "[t]he Supreme Court's latest retroactivity jurisprudence has overruled Chevron Oil's equitable balancing test as the determinant of whether a new principle of law will be applied retroactively." Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 112 F.3d 652, 672 (3d Cir. 1997) (citing Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995) and Harper).

Accord Admiral Ins. Co. v. Abshire, 574 F.3d 267, 277 n. 32 (5th Cir. 2009) (limiting Chevron Oil's approach pertaining to judicial decisions, but not repudiating the general policy behind non-retroactivity as explained in that case); Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998) (noting that Chevron Oil was overruled in part by Harper's broad rule of retroactivity); Ditto v. McCurdy, 510 F.3d 1070 (9th Cir. 2007) (recognizing implied overruling); Mills v. State of Maine, 118 F.3d 37 (1st Cir. 1997) (holding the Supreme Court has largely rejected the Chevron Oil retroactivity analysis).

In Annenberg v. Commonwealth, 757 A.2d 338, 351 (Pa. 2000), the Supreme Court of Pennsylvania held that "the Supreme Court overruled Chevron Oil insofar as it permitted a court to determine selectively whether it would apply a new rule of law prospectively only."

[8] See American Trucking Associations, Inc. v. Scheiner, 483 U.S. 266 (1987); McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida, 496 U.S. 18 (1990); American Trucking Associations, Inc. v. Smith, 496 U.S. 167 (1990); and James B. Beam Distilling Company v. Georgia, 501 U.S. 529 (1991).

> The determination whether a constitutional decision of this Court
> is retroactive—that is, whether the decision applies to conduct or
> events that occurred before the date of the decision—is a matter of
> federal law. When questions of state law are at issue, state courts
> generally have the authority to determine the retroactivity of their
> own decisions. . . . The retroactive applicability of a constitutional
> decision of this Court, however, is every bit as much of a federal
> question as what particular federal constitutional provisions
> themselves mean, what they guarantee, and whether they have
> been denied. In order to ensure the uniform application of
> decisions construing constitutional requirements and to prevent
> States from denying or curtailing federally protected rights, we
> have consistently required that state courts adhere to our
> retroactivity decisions.

Smith, 496 U.S. 167, 177-78 (1990) (internal citations and quotation marks omitted).

In particular, when a Court applies a rule of federal law, Harper imposed "full retroactive

effect in all cases still open on direct review and as to all events, regardless of whether such

events predate or postdate our announcement," Harper, 509 U.S. at 97, unless the Court has

reserved the question of whether its holding should apply to the parties before it. "Furthermore,

the legal imperative to apply a rule of federal law retroactively after the case announcing the rule

has already done so must prevail over any claim based on a Chevron Oil analysis." Id. at 98

(internal quotation and citation omitted).

We return to the state court decision at the heart of the controversy before us. As noted,

the Commonwealth Court agreed with the taxicab companies that under Section 5707(b) -- as

previously written -- the PPA "unconstitutionally deprives them of due process because it does

not provide any procedure for challenging the Parking Authority's fee schedule, either before or

after its adoption." MCT Transportation, 60 A. 3d at 916. The Court concluded that this Due

Process deprivation constituted one under the Fourteenth Amendment to the United States

Constitution, which "guarantees to those who invest their property in business enterprises that it

13

will not be taken without due process of law." Id. (quoting National Automobile Service Corp. v. Barfod, 137 A. 601, 603 (Pa. 1927). Because (1) the PPA required the taxicab companies to pay a fee "if they wish[ed] to stay in business" and because that fee could be "excessive and confiscatory", and (2) the taxicab companies "cannot challenge the fee schedule in a hearing at any stage of the process, either before or after the fee schedule becomes effective," the Court held Section 5707(b) to be a Due Process violation. Id. at 919 (quoting National Automobile, 137 A. at 602) (internal quotations omitted).

In short, the Commonwealth Court in MCT Transportation requires retrospective application because it held that the PPA was impairing federally protected Due Process rights. See Smith, 496 U.S. at 178. That alone distinguishes MCT Transportation from Oz where the Pennsylvania Supreme Court held that its prior decision in IOGA only had prospective application because that Court was engaged in a statutory interpretation of state law.[9] Where the state court interprets a state law or constitution without reference to federal law, it is free to apply its own retroactivity principles and may use the Chevron Oil analysis if it chooses to do so. Harper, 509 U.S. at 100.

In its motion to dismiss the PPA places too much weight on dicta in Oz where the Pennsylvania Supreme Court revisited a prior holding that the determination that a state tax was unconstitutional has only prospective application. See American Trucking Associations, Inc. v. McNulty, 596 A.2d 784 (Pa. 1991). In fact, the Pennsylvania Supreme Court in Oz narrowed the scope of McNulty, limiting it to its own interpretation of state statutes, and making no reference

_____

[9] "In IOGA, this Court interpreted Section 201(a) and determined that ad valorem taxes could not be assessed against oil and gas reserves that remained underground as a matter of statutory construction." Oz, 938 A.2d at 283.

14

to federal constitutional principles: "With respect to tax statutes, then, we reaffirm McNulty in

holding that a decision of this Court invalidating a tax statute takes effect as of the date of the

decision and is not to be applied retroactively." Oz, 938 A.2d at 285. As the Pennsylvania

Supreme Court has also made clear elsewhere, "Where the legal question involved is a federal

one, the United States Supreme Court has quite plainly decreed that the federal doctrine of

retroactivity cannot be circumscribed by the state courts." Annenberg v. Commonwealth, 757

A.2d 338, 351 (Pa. 2000).

   But our analysis does not end here. Although the Commonwealth Court found that the

PPA's fee schedule violated federal law -- and therefore any remedy must be applied

retroactively -- we may not determine what that remedy is. In the same body of decisions in

which the United States Supreme Court developed its retroactivity jurisprudence, retroactivity as

a choice of law is to be distinguished from the question of remedy.

> Once a rule is found to apply 'backward', there may then be a
> further issue of remedies, i.e., whether the party prevailing under a
> new rule should obtain the same relief that would have been
> awarded if the rule had been an old one. . . . [T]he remedial
> inquiry is one governed by state law, at least where the case
> originates in state court. But the antecedent choice-of-law question
> is a federal one where the rule at issue itself derives from federal
> law, constitutional or otherwise.

James B. Beam Distilling Company v. Georgia, 501 U.S. 529, 535 (1991) (Souter, J.,

announcing judgment of the Court).

   The question of remedies is thus one of state law. Id. The United States Supreme Court

has held that the only federal question regarding remedies is whether the relief afforded complies

with Due Process. In McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept.

of Business Regulation of Florida, 496 U.S. 18, 38 (1990), Justice Brennan wrote for the

unanimous Court that the state must provide taxpayers with a fair opportunity to challenge the validity of their tax obligation and a "clear and certain remedy" for any erroneous or unlawful tax collection to satisfy the Due Process Clause. Id. at 38.

The distinction of choice-of-law and remedy is at bottom founded upon federalism principles. "While the relief provided by the State must be in accord with federal constitutional requirements, we have entrusted state courts with the initial duty of determining appropriate relief. Our reasons for doing so have arisen from a perception based in considerations of federal-state comity." Smith, 496 U.S. at 176 (internal citations omitted).

Accordingly, the remedy that plaintiffs seek here -- i.e., an award of all sums paid under Section 5707 (b) to them and other class members -- is beyond the power of a federal court to decide. We have an independent obligation to determine whether we have subject-matter jurisdiction, even if no party has raised the question. Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). Because the question of appropriate remedy is entrusted to the state courts of Pennsylvania, we must dismiss this case for lack of subject matter jurisdiction as to the remedy plaintiffs seek. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) ("Under this Court's continuing obligation to assess its subject matter jurisdiction, we can dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding."). Plaintiffs must take their grievances to the courts of the Commonwealth for the monetary relief they seek.

### B. Standing

The PPA also urges us to find that Z&R Cab has no standing to obtain either the declaratory judgment it seeks that the fees were paid in violation of the United States

16

Constitution or an injunction against further assessments under Section 5707(b).

The plaintiffs assert they may maintain an action for injunctive or declaratory relief under Fed. R. Civ. P. 23(b)(2) which provides for class actions when the plaintiffs have satisfied the prerequisites of Rule 23(a)[10] and

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). Z&R Cab also states (somewhat enigmatically) as to the amended statutory provision that "the question of the efficacy of the legislature's remediation attempt is a fact question, unripe for disposition at this stage of the proceeding." Pl.'s Ans. MTD at 13. Plaintiffs appear to refer to the adequacy of the recent statutory amendments in the Parking Authority Law.

But the fact remains that the Commonwealth Court already explicitly held that Section 5707(b) "is unconstitutional and unenforceable," and enjoined the PPA "from taking any action with regard to [the taxicab companies] under authority of Section 5707(b)." MCT Transportation, 60 A.3d at 920. Because that Court has already given the plaintiffs the very equitable remedy they seek, we deny the PPA's motion to dismiss on this basis as moot.

---

[10] Fed. R. Civ. P. 23 (a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

17

## VI.    **Conclusion**

For the reasons stated above, we hold that the decision of the Commonwealth Court of Pennsylvania in <u>MCT Transportation</u> applies retroactively and we <u>sua</u> <u>sponte</u> dismiss plaintiffs' claims for relief as to an award of all sums paid to the PPA under Section 5707(b) since 2004 as we lack subject matter jurisdiction to intrude upon Pennsylvania state courts' power to decide the remedies at issue.  We also dismiss as moot plaintiffs' claim for equitable relief in light of <u>MCT Transportation</u>.

18